VESTAL *v.* LITTLE ROCK.

Decided March 14, 1891.

54  321
55  620

54  321
56  203

54  321
o70  464

54  321
72  209

1. *City—Extension of limits—Intervening river.*
  An intervening river will not preclude the annexation of an unincorporated
  town on one side to a city on the other, although at the time the only
  means of communication are two toll bridges and a number of small boats
  operated by private persons for hire.

2. *Annexation—Unplatted land.*
  The annexation of unplatted land which is touched on two sides to its entire
  extent by platted lands will not be set aside on appeal because it is va-
  cant, low, flat and wet and covered with timber, since it may have been
  needed for town purposes and may have needed organized local govern-
  ment to reclaim it.

3. *Agricultural land.*
  Agricultural land, distant a half or three-quarters of a mile from any settle-
  ment, to which no streets or other city improvements extend, and which
  is not needed nor at present adaptable for city uses, should not be an-
  nexed to a city.

4. *Amendment in circuit court.*
  On appeal from the county court, the circuit court hears a petition for annex-
  ation *de novo*; and may permit it to be amended to exclude lands
  embraced within it.

5. *Amendment in Supreme Court.*
  Where land is improperly embraced in a petition for annexation, this court
  will not permit the petition to be so amended as to exclude such land and
  affirm the judgment; but will reverse and remand the cause for further
  proceedings.

APPEAL from *Pulaski* Circuit Court.

ROBERT J. LEA, Judge.

Proceeding to annex the unincorporated town of Argenta
to the city of Little Rock. The facts are stated in the
opinion.

*U. M. & G. B. Rose* for appellant.

1. Argenta is not *contiguous* to Little Rock. 32 La.
Ann., 435; Smith, Synonyms, p. 273 (1889); 29 Mich., 451.
Being a navigable stream, the Arkansas river, together with
its bed and the banks between high and low water mark,

S C—21

belongs to the State. 94 U. S., 168; 117 U. S., 338; 20 Fed. Rep., 32; 33 *id.*, 755; Gould on Waters, sec. 66.

2. The annexation is unreasonable and improper, subjecting the annexed territory to increased burdens without any corresponding benefit. There is no impending necessity for it. 9 B. Mon., 330; 11 *id.*, 498. See also as to merging two villages. 32 N. W. Rep., 458; 5 S. & W., 281.

3. A city cannot annex territory solely for the purpose of increasing its revenue, etc. 1 Neb., 16; 13 Iowa, 86; 16 *id.*, 271; 17 *id.*, 404; 20 *id.*, 419; 30 *id.*, 542; 15 B. Mon., 497.

4. Nor is it reasonable to allow it to annex agricultural lands, not platted, nor built upon, nor needed for city purposes, but simply to increase the city revenues. See 8 Iowa, 170; 37 Am. Rep., 633; 28 Pa. St., 256; 85 *id.*, 170; 13 Iowa, 86; 17 *id.*, 407; 34 *id.*, 194; 22 Mo., 384.

*Blackwood & Williams* for appellee.

1. The fact that the Arkansas river rolls between Little Rock and Argenta does not prevent contiguity. It is immaterial who owns the bed of the river. The bed may be annexed with Argenta. 6 Johns., 135; 19 *ib.*, 175; *ib.*, 179; 5 Cow., 375; 28 N. H., 216; 11 Ohio St., 96.

2. As to the objection of onerous taxation, it is sufficient to say that the constitutional limitations protect them. But if the new territory could not partake of these benefits and had to assume burdens of taxation against their will, they could be annexed. 1 Dill. Mun. Corp.; 11 Ohio St., 96; 8 *id.*, 285; 92 U. S., 307; 43 Ark., 324; 33 Ark., 508.

*W. G. Whipple* for appellee.

1. The only case in point that could be found is in our favor. 11 Ohio St., 96.

2. The power to add contiguous territory is conferred by Mansf. Dig., sec. 922; 33 Ark., 514; 43 *id.*, 325.

3. Has there been any abuse of it? The county court has full jurisdiction. Mansf. Dig., 786.

4. The lands taken in are adapted to city purposes and uses. This is the test. 33 Ark., 517; 43 *id.*, 326.

5. As to the increased burdens of taxation, that question has not arisen yet. But see 52 Miss., 53; 58 Mo., 141; 85 Pa. St., 170; 18 Ohio, 514; 6 Mich., 54; 5 Dillon C. C., 443; Dillon, Mun. Corp., sec. 794.

HEMINGWAY, J. This appeal arises in a proceeding on the part of the city of Little Rock, to annex to itself certain outlying and contiguous territory.

The statute prescribes conditions upon a compliance with which a municipal corporation may present to the county court its petition to annex to it contiguous territory lying in the same county. Mansf. Dig., sec. 922. It provides that when such petition is presented to the county court, it shall fix a day for a hearing thereon of which notice shall be given, and that any person interested may appear and contest the granting of the petition. Mansf. Dig., sec. 786. It further provides that if the court shall find that the prescribed conditions have been observed, and shall deem it reasonable and proper to grant the petition, it shall make an order to that effect. Mansf. Dig., sec. 787 A reversal of the order granting the city's petition under this statute is sought on two grounds: first, because the court exceeded its authority in ordering that lands be annexed that were not contiguous to the city; and, second, because it ordered that lands be annexed which it was unreasonable and improper to include within the city. Before considering them directly, we will state what we conclude from the many authorities to be the correct rule to guide in determining an application for annexation.

1. That city limits may reasonably and properly be extended so as to take in contiguous lands, (1) when they are platted and held for sale or use as town lots, (2) whether platted or not, if they are held to be brought on the market and sold as town property when they reach a value corresponding with the views of the owner, (3) when they furnish

the abode for a densely-settled community, or represent the
actual growth of the town beyond its legal boundary, (4)
when they are needed for any proper town purpose, as for
the extension of its streets, or sewer, gas or water system,
or to supply places for the abode or business of its residents,
or for the extension of needed police regulation, and (5)
when they are valuable by reason of their adaptability for
prospective town uses; but the mere fact that their value
is enhanced by reason of their nearness to the corporation,
would not give ground for their annexation, if it did not ap-
pear that such value was enhanced on account of their
adaptability to town use.

2.   We conclude further that city limits should not be so
extended as to take in contiguous lands, (1) when they are
used only for purposes of agriculture or horticulture, and
are valuable on account of such use, (2) when they are va-
cant and do not derive special value from their adaptability
for city uses.   *People* v. *Bennett*, 18 Am. Rep., 111 ; *Cheaney*
v. *Hooser*, 9 B. Mon., 330 ; *City* v. *Southgate*, 15 B. Mon.,
491 ; *Morford* v. *Unger*, 8 Ia., 82 ; *New Orleans* v. *Michoud*,
10 La., Ann., 763 ; *Bradshaw* v. *Omaha*, 1 Neb., 16.

By contiguous lands we understand such as are not sepa-
rated from the corporation by outside land ; and we think
the statute permits the annexation of any such lands, and
that the court is justified in making an order to annex them,
whenever they are so situated with reference to the corpora-
tion that it may reasonably be expected that after annexa-
tion they will unite with the annexing corporation in mak-
ing up a homogeneous city, which will afford to its several
parts the ordinary benefits of local government.   But how-
ever near they may be to the petitioning corporation, if
they are so circumstanced with reference to it that it could
not reasonably be expected that the parts would amalga-
mate and organize a municipal unit which would afford to
each the ordinary benefits of local government, it would not
be reasonable and proper to order their annexation.   When
actual unity is impracticable, legal unity should not be at-

tempted, but the incongruous communities should be left to independent control. In all cases, however, where actual unity is practicable, legal unity should be ordered as promising the greatest aggregate of municipal benefits.

To sustain their first ground for reversal, appellants rely on the fact that the city is on one side, and a part of the lands included in the order is on the other side, of the Arkansas river. But we do not think this fact conclusive that the lands are not contiguous within the meaning of the act. The river is also included in the land annexed, and is therefore not a break to contiguity nor an insuperable barrier to a complete amalgamation of the communities upon its opposite banks. That intervening rivers do not prevent such amalgamation or the consequent building up and maintaining of a compact city, is attested by common observation. And the Supreme Court of Ohio in construing a provision in the same terms as that relied on, contained in a statute upon which our own appears to have been modeled, held that a city might annex territory on the opposite bank of a large river. *Blanchard* v. *Bissell,* 11 O. St., 96; see also *Ford* v. *Incorporated Town, etc.,* 45 N. W., 1031.

1. An intervening river not a bar to extension of city limits.

To sustain the ground that the annexation ordered was unreasonable and improper, reliance is had upon the fact just considered, and the further fact that the only means of communication between the communities on opposite sides of the river are afforded by two toll bridges and a number of small boats operated by private persons for hire. That such are the means of communication between the communities, does not prove that they would continue to be the only means when the two, now separate, are blended in municipal union. While these are facts to be considered in determining whether annexation is proper and reasonable, they are not necessarily inconsistent with the attainment of municipal unity or the usual benefits of local government. To what extent they would tend to prevent it, and how far this tendency would be obviated by the action of the united communities, is a question of great uncertainty. It has

been resolved against the appellants by the county court, to whose determination it is primarily committed, and again by the circuit court on appeal. Indulging the ordinary presumption in favor of the correctness of their finding in a matter about which conclusions might well differ, we would certainly not be warranted in disturbing their finding.

2. Annexation of unplatted land.     On the same ground reliance is placed upon the fact that the annexation includes forty acres of land belonging to William Metz, which is vacant, low, flat and wet, covered with timber, and, as it is claimed, for these reasons unsuited for town purposes. It has not been platted, but platted lands in the unincorporated town of Argenta touch it upon two sides to its entire extent; it does not appear how densely the adjoining lands are settled. Upon those facts we cannot say that the court was not warranted in finding that it was proper to annex this land. It may have been needed for town purposes, and it may have needed organized local government to reclaim the low, wet parts and fit it for town uses. Such places are thus reclaimed in the ordinary course of town improvements, and become centers of population and business activity.

3. Agricultural land.     The last fact urged is the inclusion of forty acres of land belonging to Joseph W. Vestal. It lies across the river from the corporation, and is from a half a mile to three-quarters of a mile distant from the unincorporated town. No streets of the corporation or village, or other town improvements, extend to it, and the line of city settlement has not reached it; it is not laid off for city uses, there is no settlement on it, and its proprietor cultivates it in his business as a florist and farmer. He remonstrated against its annexation upon the hearing in the county court, and by successive appeals renews his remonstrance here. He insists that his land is not needed nor at present adaptable for city uses, that it would not be enhanced in value by annexation, but that its annexation would subject it to taxation without any benefit or compensation to him; and the facts sustain his contention. Upon a similar state of case it has been held

by some courts that land could not be subjected to munic-
ipal taxation; and never, so far as our information goes,
that it ought to be. In this State all city property must bear
alike the burden of ordinary city taxation; *Fletcher* v. *Oliver*,
25 Ark., 289; *Cary* v. *Pekin*, 88 Ill., 154; *Martin* v. *Dix*, 52
Miss., 53; *Washburn* v. *Oshkosh*, 60 Wis., 453; and, in deter-
mining whether the annexation of particular lands is reason-
able and proper, regard should be taken of this fact. Was
it desirable and proper to include Vestal's land, and subject it
to ordinary taxation for city purposes? He had no need of
local government, and the city had no need of his land. It
could not afford him, even in a moderate degree, the ordi-
nary benefits of city government, without an expense which
it could not have contemplated without cause for remon-
strance on the part of its residents. The cases cited by the
appellee arose upon resistance by tax-payers to acts of the
legislature including their lands within cities; the courts
said it was in the power of the legislature to pass the acts,
and declined to inquire, for want of authority, whether it was
morally wrong or practically unjust to pass them. *Martin*
v. *Dix*, 52 Miss., *supra; Giboney* v. *Cape Girardeau*, 58 Mo.,
141; *City* v. *Coulter*, 58 Cal., 537; *Washburn* v. *Oshkosh*,
60 Wis., *supra; Turner* v. *Althaus*, 6 Neb., 54. Such is not
our attitude toward the question in this case; and if this
order, without the conclusiveness of legislative enactment
or final judicial sanction, can be sustained, there is no reason
why a corporation may not extend its control and power
over all the farming lands of a county, if it observe one
caution—not to skip any as it advances. We recognize the
weight that attaches to the finding of the court below; but
the facts are undisputed, and admit of but one deduction,
and that is, that Vestal's farm and garden were not needed for
city use, and that their annexation would subject him to the
burdens, without the compensating benefits, of local govern-
ment. Courts of wisdom and learning have, upon the same
facts, in the protection of private rights, set aside the solemn
acts of a co-ordinate branch of the government. *City* v.

*Southgate*, 15 B. Mon., 191 ; *Morford* v. *Unger*, 8 Ia., 82 ; *Bradshaw* v. *Omaha*, 1 Neb., 16 ; and see *County Commissioners* v. *The President*, 51 Md., 465 ; *New Orleans* v. *Michoud*, 10 La. Ann., *supra ;* 2 Dill., Mun. Corp., 795 and note ; *People* v. *Bennett*, 18 Am. Rep., *supra ; Borough of West Philadelphia*, 5 W. & S., 281 ; *Kelly* v. *Meeks*, 87 Mo., 396. Without committing ourselves to the entire approval of those cases, we cannot, in the exercise of ordinary appellate jurisdiction, ignore the considerations of justice and right that prompted them. Believing that the facts admit of no implication to sustain the judgment of the circuit court, we cannot do it.

**4. Amendment in circuit court.** The statute provides that the county court may permit the petitioner to amend the petition so as to exclude land embraced within it. Mansf. Dig., sec. 786 ; *Foreman* v. *Marianna*, 43 Ark., 324. The circuit court tries the case *de novo*, and makes such order as the county court should have made ; *Dodson* v. *Fort Smith*, 33 Ark., 508 ; and it may therefore permit a like amendment, unless restrained by other provisions of the statute. Secs. 790, 916–922, Mansf. Dig. We do not think they restrain it. Without determining their legal effect, it is sufficient to say we think they were intended to provide a cumulative remedy for a review of the action of the county court, and that the directions they contain as to the judgment to be rendered by the circuit court apply only when that remedy is invoked, and have no application to a proceeding by appeal.

For the error indicated the judgment will be reversed, and the cause remanded to the circuit court ; the petitioner should be permitted to make such amendments as it may deem proper in order to exclude from the petition lands that should not be annexed, and remonstrants should be permitted to resist granting the petition as amended.

In order to prevent possible complications, we have thought proper to add that we think the order of annexation is wholly inoperative, at least after the judgment of reversal.

### SUPPLEMENTAL OPINION ON MOTIONS TO MODIFY.

Filed May 9, 1891.

HEMINGWAY, J.   Petitions have been filed on part of the appellants and of the appellee, asking that we reconsider our former ruling and modify our former judgment in this cause.

The appellants ask that the order remanding the cause with leave to the appellee to amend its petition be rescinded, and that the petition be dismissed.   They contend that it is not within the power of the circuit court to permit an amendment to a petition for annexation which reduces the territory sought to be annexed.   Is this tenable?   This court held in a former annexation case that upon appeal to the circuit court such cases should be tried *de novo* and such proceedings had and such judgment rendered as though that court had original jurisdiction.   *Dodson* v. *Fort Smith*, 33 Ark., 511–15.   As the statute provides that such amendments, as we have directed to be permitted in the circuit court, may be made in the county court, we think the direction in that regard proper.   Mansf. Dig,, sec. 786; *Foreman* v. *Marianna,* 43 Ark., 329.

The appellee also asks that the judgment remanding the cause be set aside, but it further asks that it be permitted to amend its petition here by excluding the land which we found it was not proper to annex, and that we render a judgment of annexation upon the petition as amended.   Counsel say that it is asked upon the principle of *remittitur.* But we do not think the request is sustained by the rules regulating the right of *remittitur.*   A *remittitur* is often permitted in order to conform a judgment here to a right established below, but we know of no case in which it has served to authorize the rendition of the judgment here, which could not have been entered upon the issues tried in the court below.

In proceedings for annexation, the petitioner must particularly describe in its petition the territory to be annexed,

5. Amendment in Supreme Court.

and the finding must be either in favor of or against annexing the entire territory, and cannot be against annexation as a part and for it as to another part. Neither the court nor the persons protesting are advised or can assume that the petitioner desires, or would consent, to annex any part unless it may annex the whole of such territory; nor are they called to shape their conduct in the trial with a view to a petition for a part. The petitioner might well desire to annex the whole, but decline to receive any part of it. In this respect this proceeding is somewhat anomalous, entirely unlike the actions to recover money or real or personal property. This affects the *res* as a whole, while they concern its parts separately. In this latter class of actions the actor asks for what he fixes as his demand as well as for any part thereof to which he may be entitled, if not entitled to the whole, and may recover verdict and judgment for any part of the demand without any amendment of his pleadings; and the defendant, by proof that the plaintiff is not entitled to recover a part of the thing demanded, does not defeat the entire demand, but only reduces the amount of the recovery. In such cases the plaintiff asks for a stated sum of money or amount of property, but it is entirely proper to find and adjudge to him any part thereof to which his right may be established, for if he cannot get what he asks, he will take what he can get; and when the defendant seeks to defeat the demand, he undertakes to show that there is no right to any part of it, and if, upon a trial, he disproves the right to but a part, he cannot object that judgment was given against him for the other part, for he was called upon to defend as to every part.

Such is not the case in this class of actions; here the city asks to annex an entire designated territory—no more and no less—and it alleges that it is right and proper to grant its petition. Those who protest against the annexation deny this allegation, and thus make the only issue in the cause. When they show that for any reason it would not be right and proper to grant the petition, they have sustained the

issue upon their part; and where the petitioner takes no steps to amend, they are not called upon to accumulate evidence further. If it is not right and proper to grant the petition, it should be refused; and this whether the wrong and impropriety springs from one or many causes, or extends to the whole or only a part of the territory sought. All that the protesting parties can do is to show that the petition as presented should be refused, and to this end proof of a dozen separate reasons would be no more effective than of one. When parties have made their case, they are not called to introduce more proof merely to show how strong they can make it. They are called only to meet the issues as made, and need not anticipate or attempt to meet issues not made, and which can be made only by an amendment of pleadings, which is contingent upon the election of the other party and the leave of court. If, before the trial or upon the trial, it develops that the petition should not be granted, but the reason exists only on account of a part of the territory sought, the petitioner may, if it desire, obtain leave to amend by excluding the part; but since those protesting could not foresee the amendment, and since they make their case by establishing one reason why the petition should be refused, they should always have an opportunity to respond to the petition as amended. To rule otherwise would be to say that, after the evidence closes, the plaintiff may so amend his complaint as to require more or different proof from the other side, but that the right to adduce it shall be denied. Such does not seem fair or right, nor in accordance with our statute regulating amendments. If the evidence discloses that the plaintiff is not entitled to what he asks, and he conceives that he is entitled to something else which he may ask by amendment, he should obtain leave to amend or signify his intention to do so in such season as will point his adversary to meet the change. In this case the appellants made their case upon proving that the petition sought to annex a tract of farming land not valuable nor needed for town uses, and had a right to close without going further,

unless the city had indicated a desire to exclude that tract and annex the remainder. This it failed to do until after the decision in this court, and now it asks to do it upon terms that exclude further proof. We can not think that amendment upon such terms is just or within the purpose for which amendments are designed. The appellants had a right to rely upon the proof introduced and close their case; there is no authority of law to treat a petition to annex a whole as a petition to annex any of its separate parts, and it can only become such by an amendment which can only be made if the petitioner so elect, and upon its motion, and by leave of court, which does not go as matter of course. These are contingencies which cannot be foreseen and which no one is called to meet until they arise. It cannot therefore be said that, if there were other reasons why the petition in this case should be denied, the appellants were remiss in not proving them, nor that, because they proved but one, no other existed. They proved enough to defeat the entire petition and prevent the rendition of any judgment for annexation as the pleadings stood, and were warranted in closing, since they had no intimation from the petitioner of its intention or desire to amend. As no amendment was made in the circuit court, no judgment of annexation could properly have been rendered there, but we are asked to permit an amendment to be made and a judgment to be rendered here, although it could not have been properly entered there. That is quite a different thing from our rendering judgment upon a *remittitur* for the amount for which there could and should have been a finding and judgment below. Since the circuit court could not properly have rendered judgment in favor of annexation, without an amendment of the petition, the entire judgment was erroneous; we cannot say what the record would have disclosed if the proposed amendment had been made below, upon terms that were fair and permitted proof to be introduced, and we therefore feel that the cause is not ready for a just and intelligent final determination.

Counsel labor under a misapprehension as to the opinion delivered in this cause. The judgment as to Metz and Vogel was not affirmed. There was but one issue made in the circuit court and one finding and one judgment thereon. The issue was upon the reasonableness and propriety of the proposed annexation, and the finding and judgment were in its favor. It was here alleged as grounds of reversal that the finding below was wrong, and three different matters were relied upon as showing that; we announced that two of the matters relied upon were not of such a conclusive character as to warrant us in reversing a finding as to fact, but that the third was sufficient; and we reversed the entire judgment, and remanded the cause for a new trial. In contemplation of a future trial we attempted to announce some rules that should guide a court in determining when outlying territory should be annexed to a corporation, and remanded the cause to be tried in the light of those rules and upon the evidence that should be introduced, without any suggestion as to the weight we attached to the matters referred to, except that they were not so conclusive against the finding as to justify us in setting it aside. When the weight attached to such finding is considered, it will be seen that this indicated no concurrence in it on our part. We did not even intimate our personal views as to that.

All persons who became parties in the county court and protested against granting the petition were parties when the cause reached the circuit court for trial *de novo*. Now that the judgment of the circuit court is reversed and the cause remanded, it stands as if no trial had taken place in the circuit court, and the status of the parties there is unchanged. All who are parties should be heard to show any reason that may exist why it is not right or proper to grant the prayer of the petitioner; but strangers to the proceeding in the county court have no standing in the circuit court and should not be heard. We see no reason to recede

from the rulings heretofore made, and the motions to modify will be refused.

BATTLE and MANSFIELD, JJ., concur.

### DISSENTING OPINION.

COCKRILL, C. J. The only error found by this court in the judgment in question was in the failure of the proof to sustain the trial court's finding that a single well-defined tract of land lying on the outermost limits of the territory proposed for annexation was needed for city purposes. The opinion of the court declares that the proof was sufficient to warrant the annexation of the other territory, and no error was complained of or found in the preliminary proceedings which lie at the foundation of the right of a city to annex new territory. The error is therefore easily separable from the faultless part of the judgment; the city offers to make amends upon the usual terms by releasing her claim to the territory as to which the error was committed; and, as the record, upon which alone the cause is determined, fails to disclose any legal prejudice to any one by the residue of the judgment, I think that the established rules of practice in this court require that it should be affirmed, after striking out the tract as to which the error was committed. The practice is based upon the theory that it is to the interest of the public that there should be an end to litigation.

I see nothing exceptional in this class of cases to take it out of the general rule. When once the power to amend by striking out a part of the territory first proposed for annexation is conceded, objection to conforming to the general practice above indicated vanishes. That power exists under the decision in this case.

The fact that the remonstrants who appeared in the county court and prosecuted the appeal to the circuit court may be said to represent the public, does not alter the aspect; for if the public sees fit to permit them to represent it, it is bound by the action of its representatives. The case made by

them is the public's case, and it is not to be presumed that any facts against annexation exist except such as they have presented. When therefore the case is concluded, the courts must act upon it as they would upon any other case. There is nothing anomalous in a few persons representing the interests of many or of the public. I am not aware that any exception is made of the cases presented by them for that reason. The statute specially applicable to this class of of cases makes none. Indeed it is more to the interest of the State that litigation should cease when the public is interested than when the judgment affects individual interest only. The reason is stronger therefore that the rule invoked by the city should be enforced in this case than in ordinary cases.

Judge HUGHES concurs in this view.